UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WILD GAMING NG, LLC, | ) |
| Plaintiff, | ) 03:05-CV-00635-LRH-RAM |
| v. | ) |
| WONG INTERNATIONAL (USA) CORPORATION, | ) ORDER |
| Defendant. | ) |

Presently before the court is Wong International (USA) Corporation's ("Defendant") Motion to Dismiss or, in the Alternative, Motion for a more Definite Statement (# 2[1]). Wild Gaming NG, LLC ("Plaintiff") has filed an opposition (# 11), and Defendant replied (# 12).

**I. Factual Background**

This is an action for damages arising out of an allegedly defective gaming device that was manufactured by Defendant. In 2001, the parties entered into a contract for the sale and purchase of gaming equipment including software, slot machines, and gaming parts. The gaming equipment uses a CVT that communicates information, including "payouts and comps," between computers and gaming devices. The CVT contains "boards" that were manufactured by Defendant. The

---

[1] Refers to the court's docket number.

1  "boards" are allegedly defective due to the use of excessive adhesive.  Plaintiff alleges that
2  Defendant concealed the defects in the CVT.  As a result, Plaintiff is seeking "damages for lost
3  profits and payment of excessive comps."

## II. Legal Standard

In considering "a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'Ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).  However, a court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint.  *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

There is a strong presumption against dismissing an action for failure to state a claim.  *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  "The issue is not whether a plaintiff will ultimately prevail but whether [he or she] is entitled to offer evidence in support of the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).  Consequently, the court should not grant a motion to dismiss "for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hicks v. Small*, 69 F.3d 967, 969 (9th Cir. 1995).

## III. Discussion

As a result of the events discussed above, Plaintiff filed this action alleging causes of action for breach of contract, negligence, fraudulent misrepresentation, negligent misrepresentation, and strict liability.  Defendant is currently seeking to dismiss Plaintiff's claims for negligence, negligent misrepresentation and strict liability on the basis of the economic loss doctrine.  Specifically, Defendant argues that "Plaintiff has not plead that *property* other than the allegedly defective 'CVT equipment with defective boards' was injured or damaged." (Def.'s Mot. to Dismiss (# 2) at 4.)  In

1  addition, Defendants argue that Plaintiff's claim for fraudulent misrepresentation should be
2  dismissed because it was not pled with particularity.  In opposition to the motion, Plaintiff argues
3  that the economic loss doctrine does not apply because it has alleged property damage separate
4  from defective device.  Plaintiff also states that the complaint properly alleges a claim for
5  fraudulent misrepresentation.

**A.  Economic Loss Doctrine**

"'The economic loss doctrine marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others.'" *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000) (quoting Sidney R. Barrett, Jr., *Recovery of Economic Loss in Tort for Construction Defects: A Critical Analysis*, 40 S.C.L.Rev. 891, 894 (1989)).  Central to the doctrine is the "premise that economic interests are protected, if at all, by contract principles, rather than tort principles."  *Id*. at 1265.  Generally, "the economic loss doctrine prohibits recovery in tort for purely economic losses."  *Id*. at 1263.  Purely economic loss is defined as "'the loss of the benefit of the user's bargain . . . including . . . pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property.'"  *Id*. at 1263 (quoting *American Law of Products Liability* § 60:39, at 66 (3d ed. 1991)).  The economic loss doctrine "'shield[s] a defendant from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus . . . keep[s] the risk of liability reasonably calculable.'"  *Id*. at 1266 (quoting *Local Joint Executive Bd. v. Stern*, 651 P.2d 637, 638 (Nev. 1982)).  It also encourages the parties to negotiate economic risks through contractual provisions and price terms prior to contract formation, thus avoiding the cost burden on the public that results from the imposition of a tort duty.  *Florida Power & Light Co. v. Westinghouse Elec. Corp.*, 510 So. 2d 899, 901-02 (Fla. 1987).  Although the doctrine arose in the area of products

3

1  liability, it has since gained broader application and serves to maintain the distinction between
2  contract and tort principles. *Calloway*, 993 P.2d at 1265.

3        Construing the allegations in the complaint in a light most favorable to the Plaintiff, the
4  court finds that Plaintiff's claims for negligence and strict liability are barred by the economic loss
5  doctrine. In this action, Plaintiff is seeking "damages for lost profits and payment of excessive
6  comps." (Compl. ¶ 12.) These damages resulted from "CVT equipment with defective boards
7  which caused win and loss to be miscalculated." *See Id.* ¶ 20. Plaintiff's consequent losses and
8  inability to maximize profits from the operation of its business are purely economic losses. *See*
9  *Calloway*, 993 P.2d at 1263.

10       In *Arco Prods. Co. v. May*, May, an ARCO franchisee, brought a negligence and products
11 liability action against the franchiser. 948 P.2d 263 (Nev. 1997). The action followed ARCO's
12 installation of a new cash register system in May's franchise. *Id*. at 1296. After using the system
13 for several months, "May notified ARCO that he had been experiencing inventory shortages and
14 that he believed the shortages were caused by the new cash register system" *Id*. The damages
15 alleged in that action included "lost profits caused by the . . . cash register's failure to tally scanned
16 items, additional royalties paid to ARCO due to inventory variations, the cost of training employees
17 to use the . . . cash registers, and the difference in rental cost between the . . . system and the cash
18 registers previously used." *Id*. at 1298. The Nevada Supreme Court, however, found that May
19 could not bring a negligence action because these asserted damages were purely economic. *Id*. In
20 reaching that conclusion, the Nevada Supreme Court reasoned that May's employees allowed the
21 inventory items to be taken from the premises by customers in exchange for financial consideration.
22 *Id*. Therefore, May's grievance was not that the items were taken, but rather that his employees
23 failed to collect full payment for the transactions. *Id*.

24       The case at bar is analogous to *Arco Prods. Co.* Here, all the asserted damages arose out of
25 the allegedly malfunctioning CVT. Plaintiff is not asserting damages based on the fact that

26

4

1  payments were made (wins, losses, and comps).  Instead, Plaintiff is asserting damages based on
2  the improper calculation of those payments.  Furthermore, the Complaint, contrary to Plaintiff's
3  assertions, does not contain any allegation that any property other than the defective system was
4  damaged.  All damages alleged in the complaint are economic losses protected by principles of
5  contract law.  Therefore, Plaintiff's claims for negligence and strict liability will be dismissed.

6        The court further finds, however, that Plaintiff's claim for negligent misrepresentation is not
7  barred by the economic loss doctrine.  Plaintiff's fourth cause of action alleges that Defendant
8  made false statements in order to induce Plaintiff to enter into the contract at issue in this case.
9  Specifically, Plaintiff alleges that it was told that the "CVT's were tested for defects and
10 determined not to be defective." (Compl. ¶ 37.)  Plaintiff further alleges that Defendant failed to
11 disclose the defects after it learned that the CVTs were defective.  *Id.*

12       In *Yerington Ford, Inc. v. General Motors Acceptance Corp.*, a case involving a car
13 dealership financing agreement, this court held that the "economic loss doctrine does not bar tort
14 claims that are based on a duty independent of those imposed by the contract." 359 F.Supp.2d
15 1075, 1083 (D. Nev. 2004).  "The tort of fraudulent inducement is the most salient example of an
16 independent tort that is not barred by the economic loss doctrine." *Id*.  The court reasoned that
17 fraud claims occurring prior to the formation of a contract are excluded from the economic loss
18 doctrine because one party's ability to negotiate and make an informed decision is undermined by
19 the other party's fraudulent behavior.  *Id*. (citing *Huron Tool & Eng'g Co. v. Precision Consulting
20 Servs., Inc.*, 532 N.W.2d 541, 545 (Mich. App. 1995)).  Therefore, fraud in the inducement is
21 extraneous to the contract.  *Id*.

22       In this case, Plaintiff's claim for negligent misrepresentation alleges that Defendant made
23 false statements that induced Plaintiff to enter into the contract.  Therefore, the duty allegedly
24 breached under Plaintiff's negligent misrepresentation claim is independent of any duty that is
25 imposed by the contract.  For these reasons, the court finds that Plaintiff's cause of action for
26

negligent misrepresentation is not barred by the economic loss doctrine.

      **B. Fraudulent Misrepresentation**

      Plaintiff's third cause of action alleges fraudulent misrepresentation.  Specifically, Plaintiff alleges that Defendant falsely stated that the "CVT's were tested for defects and determined not to be defective." (Compl. ¶ 26.)  Plaintiff alleges that these false statements were made in order to induce it to enter into the contract.  Defendant's motion to dismiss seeks to dismiss this cause of action for failing to plead fraud with sufficient particularity.  Plaintiff, in opposition to the motion, states, without argument, that the complaint "more than satisfies Plaintiff's requirements for a Claim for either negligent or intentional misrepresentation." (Pl.'s Opp'n to Mot. to Dismiss (# 11) at 7.)

      Rule 9(b) of the Federal Rules of Civil Procedure states, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  A complaint asserting fraud must "detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991).  The complaint must also "set forth an explanation as to why the statement or omission complained of was false or misleading." *In re Glenfed, Inc. Sec.*, 42 F.3d 1541, 1548 (9th Cir. 1994)

      The alleged fraudulent statement at issue in this case is that the "CVT's were tested for defects and determined not to be defective." (Compl. ¶ 26.)  According to the complaint, unspecified Wong Employees allegedly made statements to IGT[2] employees who then disclosed to Plaintiff that the products were not defective. *Id.*  These misrepresentations were allegedly made from April 17, 2001, through the present. *Id*.

      The court finds that Plaintiff's allegations of fraudulent misrepresentation fail to meet the

---

[2]IGT is a manufacturer of gaming devises. (Compl. ¶ 4.)  The gaming devices manufactured by IGT use CVTs that contain the "boards" manufactured by Defendant. *Id*. ¶¶ 6-8.

6

pleading requirements of Rule 9(b).  *See* Fed. R. Civ. P. 9(b).  The complaint fails to specify any specific employee of Defendant who allegedly made the false statement.  Furthermore, the complaint doesn't specify the time or place such statements were allegedly made.  The complaint also fails to set forth an explanation as to why the statement was false or misleading.  Instead, Plaintiff merely concludes that Defendant's "representations were false."  (Compl. ¶ 27.)

However, "[r]ather than dismissing a case under Rule 9(b), it is preferable that the district court grant plaintiff leave to amend the complaint even if no request to amend was made, unless it determined that the pleading could not possibly be cured by the allegation of other facts." *Fidelity Mortgage Corp. v. Seattle Times Co.*, 213 F.R.D. 573, 576 (W.D. Wash. 2003) (citations omitted); *Tousa Homes Inc. v. Phillips*, 363 F.Supp.2d 1274, 1279 (D.Nev. 2005).  Therefore, the court will give Plaintiff thirty (30) days from the date of this order to amend its Complaint.  The failure to file an amended complaint within thirty days will result in the dismissal of Plaintiff's claim for fraudulent misrepresentation.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss or, in the Alternative, Motion for a more Definite Statement (# 2) is hereby GRANTED in part and DENIED in part.  Plaintiff's Second (negligence) and Fifth (strict liability) claims for relief are hereby DISMISSED.  Plaintiff shall have thirty (30) days from the date of this order to file an amended complaint to comply with Rule 9(b) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

DATED this 14th day of September, 2006.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE