UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| WILD GAME NG, LLC, | 3:05-CV-635-LRH (RAM) |
| Plaintiff, | ORDER |
| vs. | |
| WONG'S INTERNATIONAL (USA) CORPORATION, | |
| Defendant. | |

Before the court is Plaintiff's Motion to Disqualify Defendant's Counsel of Record (Doc. 29). Defendant opposes the motion (Doc. #31-1) and Plaintiff replied (Doc. #32).[1]

BACKGROUND

This action involves a dispute over alleged defective computer components installed by International Game Technologies ("IGT") in slot machines sold or leased by IGT to the Siena Hotel Spa & Casino, which is owned by the Plaintiff, Wild Game Ng, LLC. The action was originally filed in state court before being removed to this court.

Defendant in this case is represented by the firm of Robison, Balaustegui, Sharp, and Low ("the Robison firm"). Plaintiff alleges that Kent Robison, an attorney from the Robison firm, represented to Plaintiff's counsel, Marie Mirch, in or around late November of 2005, that Mr. Robison may be withdrawing because of a potential conflict of interest. (Docs. # 29, 30). Mr. Robison denies that he made any such assertion. (Doc. #31-1). In any event, Mr. Robison did

---

[1] Defendant's have also filed a motion to supplement the record or, in the alternative, for an order permitting defendant to file a sur-reply. (Doc. #33). The court has considered these new pleadings but finds that additional briefing will not be needed.

not withdraw and the Robison firm remains the counsel of record in this matter. (Docs. #29, 31). Since that time the litigation has progressed without any objection from Plaintiff regarding Defendant's choice of counsel. The docket report for this case reveals that numerous motions have been filed. (Doc. #30, Exh. A).

Plaintiff asserts that the conflict of interest in this case was initially overlooked due to counsel's health problems. (Doc. #29). Then, on October 11, 2006 Plaintiff's counsel, Kevin Mirch, sent a letter to Defendant's counsel informing Defendant's counsel that there was a conflict of interest and objecting to the Robison firm's representation of Defendant. (Doc. #30, Exh. B). Defense counsel Robison replied the following day, expressing his disagreement with the alleged conflict of interest and his intent to continue representing the Defendant. (Doc. #30, Exh. D). Plaintiff's counsel then sent another letter reiterating his belief that defense counsel had a conflict of interest. (Doc. #30, Exh. C). Defense counsel replied, in a letter dated October 16, 2006, maintaining the position that no conflict existed. (Doc. # 30, Exh. E).

The alleged conflict of interest concerns the Robison firm's representation of various entities in which Barney Ng, Managing Member of Plaintiff, was involved. On June 15, 1999 Mr. Robison, defense counsel, met with Messrs. Steve Urie, Peter Wilday, and Barney Ng to discuss their plans to form a company together. (Doc. #31-1, Exh. 1). Mr. DeArmond Sharp, another Robison firm attorney, later sent Messrs. Urie, Wilday, and Ng an engagement letter outlining the scope of the Robison firm's representation of Truckee River Properties and an entity to be formed under the name The Palms. (Doc. #31-1, Exh. 2). The letter specifically excludes securities regulation, gaming, and federal income tax matters from the scope of representation. (Doc. #31-2, Exh. A). The letter also specified that the representation would include "advice concerning the structure of the Truckee River Properties operating agreement, the structure of the Palms entity, and ongoing consultation and advice concerning such other legal matters that may arise for both entities." (Doc. #31-2, Exh. A).

///

///

2

Plaintiff has submitted various bills from the Robison firm. (Doc. 30, Exhs. I, J, L, M). All of these bills, except one (Exh. M) are addressed to the Palms Resort and Development LLC. Likewise, Plaintiff has provided copies of the checks used to pay the bills and, except for the bill in exhibit M, all of the checks indicate Palms Resort and Casino, LLC as the payor. (Doc. #30, Exhs. J, K, and L). The bill in exhibit M shows Gaming Entertainment Management, LLC as the responsible party and that same entity as the payor listed on the check. (Doc. #30, Exh. M). Many of these bills include itemized descriptions of the legal work the Robison firm performed for the Palms and Truckee River entities. (Doc. #30, Exhs. J-M). None of the entries reveals any private meetings between Mr. Ng and any attorney at the Robison firm. (Id.).

Defense counsel argues that its representation of the Palms and the Reno Riverfront entities was wholly unrelated to any matter regarding a purchase or lease of slot machines from Wong's, IGT, WMS Gaming, Inc or any other entity. (Doc. #31-1).

The Palms entity

According to Defendant, the then yet-to-be-formed Palms entity was contemplated as consisting of three member-managers: Messrs. Urie, Wilday and Ng. (Doc. #31-1). Rather than form a new LCC under the name The Palms, the three agreed to reorganize an existing entity, Palms Resort & Casino Development, LLC, an entity previously formed and controlled by Messrs. Urie and Wilday, into one that could be used by all three men. (Id.). The Robison firm performed the legal work necessary to make this transition, including preparing amended articles of organization and an operating agreement to reflect each man's one third membership interest. (Id.). Apparently, Messrs. Urie, Wilday, and Ng later had some dispute regarding the Palms entity and the Robison firm wrote them each to inform them that it would not represent any of them individually in their disputes, but would continue to act as counsel for the Palms entity. (Id.).

The Robison firm had further contact with the Palms entity when it mailed to the three managers a Notice of Annual Meeting. (Id.). Messrs. Urie, Wilday, and Ng all attended the meeting as well as Mr. Walter Ng, Mr. Barney Ng's father, and Mr. Kroetch, the Ng's independent attorney. (Id.). Mr. Sharp acted as secretary at the meeting and prepared the minutes. (Id.).

3

1    Following the meeting Mr. Sharp circulated the minutes for the approval of the three member-
2    managers. (Id.). Mr. Ng did not agree with some changes Mr. Urie proposed to the minutes and
3    informed Mr. Sharp as much in a letter from Mr. Kroetch to Mr. Sharp, dated March 30, 2000.
4    (Doc. #31-1, Exh. D to Exh. 2). The Robison firm performed no further services for the Palms
5    entity after that date. (Doc. #31-1). The state revoked the Palms Resort & Casino Development,
6    LLC's charter on November 1, 2002 after the LLC failed to file the required Annual List of Officers
7    with the Secretary of State. (Doc. #31-1).

8    Defense counsel asserts that during the time of its representation of the Palms entity, the
9    law firm of Petersen & Petersen represented the Palms in connection with the Palms' application
10   for a gaming license. (Doc. #31-2, Exh. E to Exh. 2). Defense counsel has provided a copy of a
11   letter from Petersen & Petersen to Messrs. Ng, Urie, and Wilday expressing the Petersen firm's
12   dismay at discovering that Mr. Ng apparently filed a separate gaming license application in the
13   name of Plaintiff, Wild Game Ng, LLC, for the same site that Petersen & Petersen had identified
14   in its filing on behalf of the Palm Resort & Casino Development, LLC. (Id.)

15   Plaintiff asserts that the Palms entity was later converted to Wild Game Ng, LLC.
16   (Doc. #29). This does not appear to be true. Plaintiff provides no documentary support for this
17   assertion. In fact, the documents Plaintiff does provide suggest that this cannot possibly be true
18   as the Secretary of State records for the Palms Resort & Casino Development, LLC indicates that
19   that entity's charter was revoked on November 11, 2002, while the Secretary of State documents
20   for Wild Game Ng, LLC indicate that that entity was formed on February 22, 2000. Given the
21   overlapping dates, Wild Game Ng, LLC cannot have been the successor entity to Palms Resort &
22   Casino Development, LLC.

23   Plaintiff further asserts that the Robison firm represented Mr. Ng personally as well as the
24   Palms entity. (Doc. #29). This also does not appear to be true. Mr. Ng's affidavit is offered as the
25   only evidence of this fact from the Plaintiff. (Doc. #30). However, other evidence indicates that
26   at the Palms Resort & Casino Development, LLC meeting held on March 21, 2000, Mr. Ng was

4

accompanied by his father, Walter Ng, and their attorney, Mr. Kroetch,[2] from which can be inferred that Mr. Kroetch was there to protect Mr. Ng's interests. Had Mr. Ng been personally represented by the Robison firm, there would have been no reason for Mr. Kroetch's attendance.

Mr. Ng's affidavit suggests that the Robison firm was provided sensitive financial information and privileged information about Wild Game Ng, LLC. (Doc. #30). While Mr. Ng may have provided some information to the Robison firm regarding strategies or business operations for the Palms or Truckee River entities, it is not apparent why or in what context Mr. Ng would have had occasion to provide information about Wild Game Ng, LLC an entity that was only formed towards the end of the Robison firm's relationship with the Urie/Wilday/Ng entities and that did not engage the services of the Robison firm.

<u>The Truckee River Properties/Reno Riverfront LLCs</u>

Truckee River Properties, LLC was an entity owned and controlled by Mr. Urie and Mr. Wilday. (Doc. #31-1). The Robison firm provided legal services for this entity, including adding Mr. Ng as a member and revising the appropriate documents to reflect the change in ownership and the terms of the new operating agreement under which the three men would conduct their jointly held LLC. (Id.). At some point, the entity underwent a name change and became Reno Riverfront Properties, LLC. (Doc. #31-1, Exh. 2). The Robison firm apparently assisted with this transformation as well. (Id.).

Defendant asserts that the Robison firm also represented Reno Riverfront in connection with the negotiation of a real property lease between Reno Riverfront and Five-Way Development, a Nevada limited partnership controlled by Mr. Ng and represented in the negotiations by Mr. Ng's attorney, Mr. Kroetch. (Doc. #31-1).

///

///

---

[2] It is also worth noting that at the time of this meeting, Mr. Ng had already formed Wild Game Ng, LLC. (Doc. #30, Exh. G).

5

DISCUSSION

Standard for Disqualification of Opposing Party's Counsel

A.     Seriousness of disqualification sanction and the effect of undue delay

"Courts deciding attorney disqualification motions are faced with the delicate and sometimes difficult task of balancing competing interests: the individual right to be represented by counsel of one's choice, each party's right to be free from the risk of even inadvertent disclosure of confidential information, and the public's interest in the scrupulous administration of justice." Brown v. Eighth Judicial Dist. Court, 14 P.3d 1266, 1270 (Nev. 2000); see also Hull v. Celanese Corp., 513 F.2d 568, 570 (2d Cir. 1975).  Close cases should be resolved in favor of disqualification. Palmer v. The Pioneer Hotel & Casino, 19 F. Supp. 2d 1157, 1162 (D. Nev. 1998)(citing Faison v. Thornton, 863 F. Supp. 1204, 1216 (D. Nev. 1993)).

"Particularly strict judicial scrutiny" should be given to a motion to disqualify opposing counsel because there is such a significant possibility of abuse for tactical advantage.  Optyl Eyewear Fashion Int'l Corp. v. Style Co., Ltd., 760 F.2d 1045, 1050 (9th Cir. 1985)(citing Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 721-22 (7th Cir. 1982).  Tactical considerations often motivate such motions.  In re Marvel, 251 B.R. 869, 871 (Bkrtcy. N.D. Cal. 2000).  As such, courts must take care to prevent parties from misusing motions for disqualification as "instruments of harassment or delay." Brown v. Eighth Judicial Dist. Court, 14 P.3d at 1270.  Courts approach the issue of whether to disqualify opposing counsel as "a drastic measure which courts should hesitate to impose except when absolutely necessary." United States v. Titan Pac. Const. Corp., 637 F.Supp 1556, 1562 (W.D. Wash. 1986).

Where a party fails to make a motion to disqualify opposing counsel in a timely manner, the court may deem that party to have waived that right.  Trust Corp. Of Montana v. Piper Aircraft Corp., 701 F.2d 85, 87-88 (9th Cir. 1983)(affirming a finding of undue delay where the appellant knew of the opposing party's choice of counsel for more than two years before objecting).  Other cases have found less egregious delays constituted grounds for denial of such

motion. See, e.g., Conley v. Chaffinch, 431 F. Supp.2d 494 (D. Del. 2006)(nine month delay); In re Modanlo, 342 B.R. 230 (D. Md. 2006)(five month delay).

Defendant's pleadings correctly highlight the seriousness of such a motion. The court recognizes the potential for such a motion to be used for an improper purpose, such as delay. Here, the Plaintiff has known of Defendant's choice of the Robison firm as its counsel for more than a year. The court finds that Plaintiff could not have reasonably relied on an alleged promise to withdraw from defense counsel. If such a promise was made, it obviously was not fulfilled and Plaintiff cannot now complain to have been relying on such an unfulfilled promise for more than a year. While the court has great sympathy for Plaintiff's counsel's health issues, and in fact regularly grants extensions to party's experiencing unexpected health difficulties, the court finds it difficult to believe that Plaintiff could not have made this motion earlier, were Plaintiff truly concerned about a conflict of interest between Plaintiff and Defense counsel. Instead of making a timely motion, Plaintiff waited until the eve of Mr. Ng's deposition to object to Defendant's choice of counsel. Thus, the court finds that the Plaintiff's motion should be denied on grounds of undue delay

B.  Even if the motion were timely, analysis of the Waid factors reveals that denial of the motion is proper

Under the Local Rules, attorneys practicing before this court are required to abide by the Model Rules of Professional Conduct as adopted and amended by the Nevada Supreme Court. Local Rule 10-7(a). Under those rules, the general rule regarding conflicts of interest is that "a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Supreme Court Rule 1.9 (replacing former Supreme Court Rule 159).

The language of Rule 1.9(a) is nearly identical to the language of the former applicable rule, Rule 159. The only difference is that the language of the former rule said "unless the former client

7

consents, preferably in writing, after consultation" while the language of the current rule says "unless the former client gives informed consent, confirmed in writing." Such a difference is not material given the facts of this case. Thus, disqualification under Rule 1.9 is governed by the three part inquiry set forth in Waid v. Eighth Judicial District, which considered the disqualification issue under the previous version of the rule. Waid v. Eighth Judicial District, 119 P.3d 1219 (2005). Under Waid, the court must (1) make a factual determination concerning the scope of the former representation, (2) evaluate whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters, and (3) determine whether that information is relevant to the issues raised in the present litigation. Waid, 119 P.3d at 1220 (adopting Seventh Circuit's test).

(1)     Factual determination concerning the scope of the former representation

Here, Plaintiff argues that the scope of the former representation is admitted to in the October 16, 2006 letter from Mr. Sharp. (Doc. #29). Plaintiff's argument requires the court to infer from the fact that Mr. Sharp's letter admits to representing "Palms Resort and Casino Development, LLC, in which Mr. Ng, Steve Urie, and Peter Wilday were members" that the scope of the representation encompasses representation of Mr. Ng personally or of Wild Game Ng, LLC.

The court finds that the letter does not, nor does anything else Plaintiff has presented to the court, support a finding that the scope of the representation included representation of Mr. Ng in his personal capacity. Several facts before the court weigh against a determination that the Robison firm represented Mr Ng in his personal capacity: (1) the presence of Mr. Kroetch, Mr. Ng's personal attorney, at the March 21, 2000 meeting, (2) Mr. Kroetch's letter to the Robison firm expressing his client's objections to the proposed changes to the minutes, (3) the engagement letter from the Robison firm, (4) the bills submitted by the Robison firm to the Palms Resort and Casino, LLC and the checks issued in payment of those bills.

/ / /

/ / /

8

Mr. Kroetch's attendance suggests that he was there to protect Mr. Ng's interests; interests separate from those of the Palms entity though not mutually exclusive. Mr. Kroetch's letter further suggests that Mr. Kroetch, not the Robison firm, represented Mr. Ng's personal interests as distinct from those of the Palms entity. Had Mr. Ng been personally represented by the Robison firm, there would have been no reason for Mr. Kroetch's attendance nor for his letter. If the Robison firm represented Mr. Ng in his personal capacity, he could have just made his request regarding the minutes directly to the Robison firm, without a letter from Mr. Kroetch.

The engagement letter from the Robison firm also suggests that the scope of the representation was limited to matters concerning the two entities: Truckee River Properties, LLC and "an entity to be organized named The Palms." (Doc. 31-2, Exh. A). Those two entities are identified as the client; nowhere does the letter suggest that the Robison firm will represent Mr. Urie, Mr. Wilday, or Mr. Ng as individuals. The bills submitted from the Robison firm further support this as they are addressed to the Palms entity, except for one letter that is addressed to Gaming Entertainment Management.[3] All of the bills addressed to the Palms LLC were apparently paid by the Palms LLC, not by Mr. Ng or Wild Game Ng, LLC. (Doc. #30).

(2) Evaluation of whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters

In proving that a prior representation is substantially related to the matter at bar, the moving party need not divulge the actual confidences revealed to opposing counsel in the earlier matter. Robbins v. Gillock, 862 P.2d 1195, 1197 (Nev. 1993).

Plaintiff urges that Mr. Ng's affidavit is enough to support a finding that Mr. Ng likely gave confidential information to the Robison firm in connection with the Robison firm's representation of the Palms and Truckee River entities, of which Mr. Ng was a managing member. (Doc. #29). Mr. Ng's affidavit provides only the vague assertion that at the time of the representation he

---

[3] There is no evidence before the court suggesting any connection between Mr. Ng and Gaming Entertainment Management.

9

provided "sensitive financial information as well as privileged information about the company and its ongoing strategies of its business operations." (Doc. #30, Exh. H). It is not clear to which company this refers: the Palms entity, the Truckee River entity, or Wild Game Ng, LLC. Mr. Ng's affidavit also asserts that the Palms entity was later converted to Wild Game Ng, LLC. (Id.). As noted above, this does not appear to be true. Wild Game Ng and the Palms Resort and Development, LLC existed concurrently and so it is impossible that Wild Game Ng was the successor entity to Palms Resort and Development. Thus, the Plaintiff's argument that disqualification is proper because the attorney represented previous affiliates of the Plaintiff does not apply here, as Wild Game Ng is not a successor entity to Palms Resort and Development, LLC. Further, it must be inferred from the fact of their concurrent existence that the Palms entity was separately organized. There is no evidence before this court suggesting that the Robison firm had anything to do with the formation of Wild Game Ng, LLC.

Given these facts, the court finds it is unreasonable "to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters." Waid, 119 P.3d at 1223. While it seems likely that some sort of financial and business planning information was likely given to the Robison firm, this information would have related to the Palms entity or the Truckee River entity, not to Wild Game Ng, LLC. Although, as Defendants points out, the formation of a limited liability company under Nevada Revised Statutes does not necessarily require sensitive financial information (Doc. #31-1), the court finds that such financial information might be reasonably necessary as part of an attorney's advising the clients regarding the structure of their proposed entity. NEV. REV. STAT. §§ 86.141-86.226 (2006).

(3)  Determination of whether that information is relevant to the issues raised in the present litigation

The court is permitted to "undertake a realistic appraisal of whether confidences might have been disclosed in the prior matter that will be harmful to the client in the later matter." Robbins v. Gillock, 862 P2d at 1197. Key to such a determination is an inquiry into whether, as

10

set forth in the Waid case, the information allegedly revealed has any relevancy to the current litigation. 119 P.3d 1219.

Plaintiff correctly identifies the key issue in the underlying litigation of this case: the amount of damages suffered by Plaintiff, Wild Game Ng, LLC, by virtue of the alleged defective boards manufactured by the Defendant and installed in gaming equipment owned by Wild Game Ng, LLC. (Doc. #29). Plaintiff contends that the information Mr. Ng allegedly provided to the Robison firm is very relevant in this case because "the defense attorneys in this case have privileged information concerning the business plan for the riverside casino and finances of Mr. Ng." (Doc. #29, p. 8). In the same paragraph, Plaintiff argues that the amount of damages will be calculated using projections submitted as part of Wild Game Ng, LLC's gaming license application. (Doc. #29).

Even if the projections submitted as part of the gaming licensure process later have some relevancy at trial as to damages, such a situation would still not mitigate in favor of disqualifying the Defendant's chosen counsel, the Robison firm, because there is no evidence before the court indicating that the Robison firm had anything to do with the Plaintiff's application for a Nevada gaming license. To the contrary, documentation submitted along with Mr. Sharp's affidavit shows that the firm of Petersen and Petersen represented the Palms entity in connection with the gaming license application. (Doc. #31-2, Exh. 2). Thus, the court finds that any confidential or sensitive information received by the Robison firm in connection with their representation of entities with which Mr. Ng was formerly affiliated would have necessarily been limited in scope and only concern such information as was necessary to assist Mr. Ng and his then business partners in forming or altering the Palms LLC and the Truckee River LLC. Such information would not likely be relevant to the issues raised in this present litigation.

Thus, the Waid factors mitigate against disqualification in this case. Although Mr. Ng was involved with some entities that had an attorney-client relationship with the Defendant's counsel, the Robison firm, the firm never represented the Plaintiff in this case, Wild Game Ng, LLC, or Mr. Ng personally. The facts make it unlikely that Mr. Ng revealed to any attorney with the Robison

11

firm, in connection with that firm's work to form or reorganize some LLC's on behalf of Mr. Ng and his then business associates, facts that would be damaging to Plaintiff now or relevant to the key issues in this case.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Disqualify Opposing Counsel (Doc. #29) is DENIED.

DATED: November 29, 2006.

_____
UNITED STATES MAGISTRATE JUDGE